MUTUAL FIRE, MARINE & INLAND INSURANCE CO. et al., Respondents, v FRED S. JAMES & COMPANY OF NEW YORK, Appellant. (Action No. 1.)

MISSION INSURANCE COMPANY, Respondent, v FRED S. JAMES & COMPANY OF NEW YORK, Appellant. (Action No. 2.)

First Department, March 10, 1983

### APPEARANCES OF COUNSEL

*Paul N. Watterson, Jr.,* of counsel (*David M. Brodsky* and *Ronald A. Sarachan* with him on the brief; *Schulte Roth & Zabel* and *O'Halloran, Lively & Walker,* attorneys), for appellant.

*Anthony J. DiOrio* of counsel (*Benjamin A. Fleischner* with him on the brief; *White & Fleischner,* attorneys), for Mission Insurance Company, respondent.

*Mark F. Bruckmann* of counsel (*Edward G. Spacek* with him on the brief; *Mendes & Mount,* attorneys), for Mutual Fire, Marine & Inland Insurance Co., and others, respondents.

Ross, J.

Standard Metals Corporation (Standard) is a Delaware corporation. In 1974, Standard retained defendant Fred S. James & Company of New York (James), as its agent, to procure $9,000,000 in "all risk" property damage insurance to cover an underground gold mine that Standard owned and operated in Silverton, Colorado.

James is a New York corporation engaged in the insurance brokerage business.

Pursuant to Standard's instructions, James obtained the requested coverage from various foreign and domestic insurance companies and underwriters (Insurers). These policies protected the gold mine, which was located underneath a body of water known as Lake Emma (Lake), from such perils as floods.

It is uncontested that Standard paid the necessary premiums.

On June, 4, 1978 the Lake discharged into Standard's mine, causing extensive flood and collapse damage to property and equipment. As a result of this disaster, the mine was closed for over a year.

Standard submitted a timely notice of claim to the Insurers.

All of the Insurers rejected the claim. The primary reason for rejection was their contention that James, as Standard's agent, had misrepresented the extent of the Insurers' liability because representatives of James had allegedly told them that:

(a) there would be no risk of loss due to flood or collapse; and,

(b) that there would be no coverage for underground property or equipment.

Since the claim had been denied, Standard sought to recover the proceeds of the policies by suing the Insurers in the United States District Court for the District of Colorado.

As a result of the Insurers' position that James had been guilty of misrepresentation, Standard joined James in this Colorado suit as a defendant.

In this action against James, Standard alleged that, if James was found to have misrepresented material facts to these Insurers, so that they were found not to be liable on the policies, then James should be held liable in the amount of damages that Standard would otherwise have recovered from Insurers.

Each one of the Insurers, in the answer it submitted in the Colorado case, alleged as an affirmative defense, and as a claim for rescission, that Standard, by its agent James, had represented falsely that "there was no flood, collapse or underground exposure". Prior to trial, the Insurers submitted a pretrial statement of the issues of fact and law, in which they stated that one of the issues was whether Standard, through agent James, had misrepresented that there was no exposure to the danger of flood or collapse and that no underground property was being insured.

Before trial the parties engaged in taking depositions in several States within the United States and in England.

Even though the Insurers and James were defendants together in the Colorado action, and did not file cross claims against one another, throughout the pretrial proceedings as well as during the actual trial, Insurers acted as adversaries toward James, since they sought to impose liability upon James.

Significantly, Insurers stipulated in the Colorado trial that James was exclusively Standard's agent and not their agent. Therefore, while James had "a relationship of personal trust and confidence" (*Matter of Lynd v Heffernan*, 286 App Div 597, 599) with Standard, it had no such relationship with Insurers.

The trial in Colorado lasted three weeks. In a special verdict, the jury found that the Insurers intended to insure Standard's underground machinery and equipment, that the loss was caused by a flood covered by the policies, that James was not liable because James had not made any misrepresentations that resulted in Insurers deciding to insure Standard's mine; and, that defendant Insurers were liable to Standard in the amount of $9,000,000.

Subsequent to the Colorado verdict, the Mutual Fire, Marine & Inland Insurance Company, *et al.,* (Insurance

Group) and the Mission Insurance Company (Mission) who were part of Insurers, commenced separate actions against James in New York, to recover from James $4,420,000, which was the portion of the verdict entered collectively against Insurance Group and Mission.

These two actions, which have been consolidated, present the issues before us. Each complaint alleges that James negligently misrepresented the potential risk to the insurance carrier concerned, and that carrier relied on that representation to its detriment. James in its answer sets forth the affirmative defenses of *res judicata* and collateral estoppel.

Subsequent to the joinder of issue, Insurance Group moved and Mission cross-moved to dismiss James' affirmative defenses and James too cross-moved for summary judgment on the ground of these affirmative defenses, and also to dismiss the complaints on the grounds that they failed to state causes of action.

Special Term granted the motion of Insurance Group and the cross motion of Mission but denied James' cross motion, writing: "Although both actions [Colorado and New York] arise from the same set of facts, the issues are different. As set forth in *Schwartz* v. *Public Administrator,* 30 A.D.2d 193, 291 N.Y.S.2d 151, affd. 24 N.Y.2d 65 (1969), 'such prior judgment is binding and conclusive as to the material and relevant issues actually and fully litigated on the merits in the prior action and determined by the judgment entered therein.' James & Company has not demonstrated that these standards have been met."

We disagree with Special Term's conclusion that "the issues are different" in the Colorado and New York actions.

The issue in both actions is the same: Did James make misrepresentations to Insurance Group and Mission, that persuaded them to insure Standard's gold mine?

Our examination of the Colorado and New York actions lead us to the inevitable conclusion that this critical issue has already been determined, on the merits, in the Colorado action, after Insurance Group and Mission had a full, fair and unhurried opportunity to contest it. Thus, James' affirmative defense of collateral estoppel has merit.

The Court of Appeals wrote in *Gramatan Home Investors Corp. v Lopez,* (46 NY2d 481, 485) that: "Collateral estoppel, together with its related principles, merger and bar, is but a component of the broader doctrine of *res judicata* which holds that, as to the parties in a litigation and those in privity with them, a judgment on the merits by a court of competent jurisdiction is conclusive of the issues of fact and questions of law necessarily decided therein in any subsequent action (*Matter of Shea,* 309 NY 605, 616; cf. *Matter of McGrath v Gold,* 36 NY2d 406, 410-411). This principle, so necessary to conserve judicial resources by discouraging redundant litigation, is grounded on the premise that once a person has been afforded a full and fair opportunity to litigate a particular issue, that person may not be permitted to do so again (*B. R. DeWitt, Inc. v Hall,* 19 NY2d 141, 144; *Good Health Dairy Prods. Corp. v Emery,* 275 NY 14, 18). Collateral estoppel is a corollary to the doctrine of *res judicata;* it permits in certain situations the determination of an issue of fact or law raised in a subsequent action by reference to a previous judgment on a different cause of action in which the same issue was necessarily raised and decided (*Statter v Statter,* 2 NY2d 668; Siegel, New York Practice, § 464, p 614; 9 Carmody-Wait 2d, NY Prac, § 63:204, pp 208-209; cf. *Ashe v Swenson,* 397 US 436, 443)."

As was written in *Vincent v Thompson* (50 AD2d 211, 217): "When collateral estoppel operates, certain questions actually litigated and determined in one action are precluded from relitigation in a later action when the same questions arise anew, even in a suit on a different cause of action (Rosenberg, Collateral Estoppel in New York, 44 St Johns L Rev 165, 166)."

The doctrine of collateral estoppel "is essentially a rule of justice and fairness" (*Commissioners of State Ins. Fund v Low,* 3 NY2d 590, 595).

We hold that on this record "[w]here a full opportunity has been afforded to a party to the prior action and he has failed to prove his freedom from liability or to establish liability or culpability on the part of another, there is no reason for permitting [Insurance Group and Mission] to

retry these issues" *Good Health Dairy Prods. Corp. v Emery* (275 NY 14, 18).

Whether or not James misled the Insurers, whether or not the Insurers intended to cover property underground, whether or not the insurance policies were intended to cover against flood and collapse damage, are questions that were fully litigated in Colorado and decided against the Insurers. Justice and fairness precludes the Insurers from again litigating these same issues in New York.

Accordingly, the order, Supreme Court, New York County (KIRSCHENBAUM, J.), entered August 13, 1982, which in a consolidated action: (a) in Action No. 1 granted the motion of plaintiffs, the Mutual Fire, Marine & Inland Insurance Company, *et al.* (Insurance Group) and in Action No. 2 granted the cross motion of plaintiff Mission Insurance Company (Mission) to dismiss the defendant's affirmative defenses of *res judicata* and collateral estoppel and (b) denied the cross motion of the defendant made in each one of these actions, for summary judgment, and to dismiss the complaint for failure to state a cause of action, is unanimously reversed on the law, the motion of plaintiff Insurance Group and the cross motion of plaintiff Mission are denied, and the cross motion of the defendant for summary judgment is granted, and the complaint is dismissed in each action for failure to state a cause of action, with costs.

SILVERMAN, FEIN, MILONAS and ALEXANDER, JJ., concur.

Order, Supreme Court, New York County, entered on August 13, 1982, unanimously reversed on the law, the motion of plaintiff Insurance Group and the cross motion of plaintiff Mission are denied, and the cross motion of the defendant for summary judgment is granted, and the complaint is dismissed in each action for failure to state a cause of action. Defendant-appellant shall recover of all plaintiffs-respondents one bill of $75 costs and disbursements of this appeal.