**G & T TERMINAL PACKAGING CO., INC., Tray–Wrap, Inc., and Mr. Sprout, Inc., Plaintiffs,**

v.

**CONSOLIDATED RAIL CORPORATION, Defendant.**

No. 88 Civ. 5632 (JMW).

United States District Court, S.D. New York.

July 14, 1989.

Linda Strumpf, Bronx, N.Y., for plaintiffs.

Hyman Hillenbrand, Kroll and Tract, New York City, for defendant.

## MEMORANDUM AND ORDER

WALKER, District Judge:

The present action is before the court on defendant Consolidated Rail Corporation's motion for summary judgment pursuant to Fed.R.Civ.P. 56, on its motion for sanctions pursuant to Fed.R.Civ.P. 11 and 28 U.S.C. § 1927, and on its motion for an injunction

pursuant to 28 U.S.C. § 1651. For the reasons stated below, the Court dismisses plaintiffs' complaint on the grounds of res judicata and collateral estoppel and grants defendant's motion for sanctions. The Court denies defendant's motion for an injunction.

## I. BACKGROUND

### A. The Litigants and Related Parties

Defendant's motions necessarily turn on the complicated prior proceedings between the parties. As a result, the Court first must examine the factual background and the litigation history between the parties.

Plaintiffs G & T Terminal Packaging Co., Inc. ("G & T"), Tray Wrap Inc. ("Tray Wrap") and Mr. Sprout Inc. ("Mr. Sprout") receive and repackage perishable produce delivered to them by rail and other modes of transportation from various shippers across the United States. Anthony Spinale owns and controls G & T and Mr. Sprout. Plaintiffs deny that Spinale also controls Tray Wrap, although they admit that he has some relationship with the company. All three plaintiffs share the same address for their companies' principal offices in Huntsbridge, New York and repackaging operations in Kingsbridge, New York.

Defendant Consolidated Rail Corporation ("Conrail") is a railroad carrier which transports produce shipments consigned by shippers to the plaintiffs at their New York facilities.

Several other actors, related to defendant, play a vital role in Conrail's working relationship with G & T, Tray Wrap and Mr. Sprout. At the time relevant to this action, Conrail utilized the services of the Railroad Perishable Inspection Agency ("RPIA"), a division of a nonprofit, unincorporated association known as the Eastern Railroad Association ("ERA") to which Conrail belonged. The RPIA inspected—post-delivery—the merchandise delivered to ERA members like Conrail. Following an inspection conducted on the receivers' premises, the RPIA submitted written reports to members, such as Conrail, reflecting the condition of delivered goods in the railcars before unloading. Conrail used these reports to evaluate the receivers' right to compensation for damage claims filed concerning these goods.

The Merchants Despatch Transportation Corporation ("MDT") is a wholly-owned subsidiary of Conrail. The MDT inspects, services, and repairs the refrigeration and ventilation units installed in railcars used to transport perishable cargo. The MDT prepares records summarizing its inspection findings and submits them, along with repair bills, directly to Conrail.

### B. Prior Litigation

The most intricate aspect of this case remains its procedural history.

#### 1. The ERA Case:

As long ago as March 1975, Spinale complained to RPIA management about alleged unfair and discriminatory practices and criminal activity by RPIA inspectors. See D. Motion Ex. A.[1] Despite this and subsequent accusations, G & T, Tray Wrap, Mr. Sprout and Spinale did not commence an action against the ERA until May 18, 1983 ("the ERA Case") in the New York Supreme Court, New York County. In that case, plaintiffs alleged that the RPIA fraudulently prepared its inspection reports which Conrail relied upon to assess the merits of plaintiffs' damage claims. Plaintiffs based their action on evidence of allegedly altered inspection reports prepared by RPIA Inspector Victor Simas. See generally Simas Aff. Plaintiffs also alleged harassment and tortious interference with contractual and business relations.

On October 1, 1986, the New York Supreme Court granted summary judgment for ERA on all counts, including the fraud count. The court found the fraud claim

---

**1.** References throughout this Memorandum are as follows: Defendant's Motion for Summary Judgment ("D. Motion"); Exhibit ("Ex."); Affidavit of V. Simas ("Simas Aff."); Affidavit of J. D'Orlando ("D'Orlando Aff."); Affidavit of J. McGuire, K. McGuire, V. Simas ("McGuire Aff."); Plaintiffs' Present Complaint ("Comp."); Plaintiffs' Complaint in the ERA Case ("ERA Comp."); Plaintiff's Complaint in the MDT Case ("MDT Comp.").

baseless because plaintiffs were "unable to pinpoint even a single illustration of impropriety ..." *G & T Terminal Packaging Co. v. Smith*, No. 14383, slip. op. at 2–3 (N.Y.Sup.Ct., N.Y.Cty., Oct. 1, 1986) (Shainswit, J.). The Appellate Division later affirmed the judgment. *G & T Terminal Packaging Co. v. Smith*, 139 A.D.2d 975, 527 N.Y.S.2d 329 (1988).

### 2. The G & T Case:

While the ERA case was still pending, G & T and Spinale filed suit against Conrail in the United States District Court for the District of New Jersey ("the G & T Case"). That case traces its origin to June 1983, when Conrail had imposed a surcharge designed to cover Conrail's higher cost of doing business with plaintiffs. Conrail argued that the higher cost reflected the disproportionate cost of verifying, processing, and defending plaintiffs' numerous—and allegedly meritless—damage claims. Conrail contended that plaintiffs had inundated Conrail with claims. For example, in 1981, G & T, Tray Wrap and Mr. Sprout filed more damage claims than all other Conrail receivers of perishable goods combined.

G & T and Spinale alleged that Conrail's newly imposed surcharge violated various provisions of the Interstate Commerce Act ("ICA") and was discriminatory since Conrail applied it only to G & T, Tray Wrap and Mr. Sprout, even though plaintiffs allegedly received no additional services for the additional fee charged. G & T and Spinale further contended that Conrail imposed the surcharge to punish G & T for filing damage claims. G & T and Spinale did not allege that Conrail relied upon fraudulent RPIA and MDT reports when assessing damage claims—the claim advanced in the ERA case. The New Jersey District Court dismissed G & T and Spinale's ICA claims on September 28, 1984, but allowed the two plaintiffs to pursue their common law rate discrimination claims. Thus, throughout 1985 and 1986, G & T and Spinale engaged in discovery in both the ERA and G & T cases. Ultimately, however, the New Jersey Court granted summary judgment as to plaintiffs' remaining common law rate discrimination claims. *G & T Terminal Packaging Co. v. Consolidated Rail Corp.*, 646 F.Supp. 511 (D.N.J. 1986), *aff'd*, 830 F.2d 1230 (3d Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 1291, 99 L.Ed.2d 501 (1988).

### 3. The First MDT Case:

On September 2, 1986, G & T, Tray Wrap and Mr. Sprout filed suit against Conrail's subsidiary, MDT ("the first MDT case") in the Supreme Court of New York, Bronx County. In that case, the three plaintiffs sought an injunction compelling MDT to produce the inspection reports it had prepared for Conrail. G & T, Tray Wrap and Mr. Sprout asserted that they needed these documents to support their damage claims against Conrail. G & T, Tray Wrap and Mr. Sprout relied upon the affidavits of several MDT employees attesting to MDT's alleged fraudulent activity. *See generally* McGuire Aff. Plaintiffs claimed that they discovered this information after the commencement of the G & T case against Conrail and thus could not add this claim to that action.

On March 3, 1987, the New York Supreme Court denied plaintiffs' request for an injunction in the first MDT case. *G & T Terminal Packaging Co. v. Merchants Despatch Transportation Corp.*, No. 21691/86 (N.Y.Sup.Ct., Bronx Cty, Mar. 3, 1987). That court found that plaintiffs had failed to state a cause of action. The Court also explicitly stated that plaintiffs could have obtained the desired MDT records in the G & T case.

### 4. The Second MDT Case:

Shortly after the dismissal of the first MDT case, Mr. Sprout filed a new action against MDT in the Superior Court of New Jersey alleging tortious interference with its contractual relations with Conrail ("the second MDT Case"). MDT removed the case to the federal court in New Jersey. Judge Sarokin eventually dismissed the claim on statute of limitations and res judicata grounds. *Mr. Sprout, Inc. v. Merchant Despatch Transportation Corp.*,

No. 87–1574, slip. op. at 10, 1988 WL 166678 (D.N.J. Mar. 2, 1988), *aff'd*, 856 F.2d 184 (3d Cir.1988) (Order without opinion).

### 5. The Tray Wrap Case:

Subsequently, Tray Wrap filed a suit against Conrail in the Bronx County Civil Court alleging that Conrail wrongfully refused to pay damage claims ("the Tray Wrap case"). The court dismissed this claim because Tray Wrap commenced the action against the wrong party. The court held that Tray Wrap should have brought suit against Southern Pacific Corporation because it was the carrier against whom Tray Wrap originally filed its claim. *Tray Wrap Inc. v. Consolidated Rail Corp.*, No. 26794/85 (Bronx Cty., Civ.Ct. April 11, 1988).

### C. The Present Action

On August 1, 1988, G & T, Tray Wrap and Mr. Sprout filed the present action against Conrail in the Supreme Court of New York, Bronx County. Shortly thereafter, Conrail removed the case to this Court. In brief, plaintiffs allege that Conrail handled G & T, Tray Wrap and Mr. Sprout's damage claims based upon fraudulent RPIA and MDT inspection reports.[2]

Conrail claims that plaintiffs failed to assert this claim prior to August 1988 in order to harass Conrail and its affiliates. Conrail also asserts that plaintiffs had full knowledge of the facts upon which they base their present complaint during the pendency of no less than three prior actions—the G & T, ERA, and second MDT cases. Conrail argues that plaintiffs' failure to assert their claims earlier bars plaintiffs' present complaint on the grounds of res judicata and collateral estoppel. Conrail also argues that the Court should dismiss plaintiffs' claims as untimely, as well as for failure to plead fraud with particularity. Given today's ruling, the Court need not address those two issues. For the reasons stated below, the Court grants summary judgment on behalf of Conrail.

## II. DISCUSSION

### A. Res Judicata

Defendant first claims that plaintiffs' complaint is barred by the doctrine of res judicata. Under this familiar doctrine, "a judgment on the merits in a prior suit bars a second suit involving the same parties, or their privies, based on the same cause of action." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326, n. 5, 99 S.Ct. 645, 649, n. 5, 58 L.Ed.2d 552 (1979). The doctrine protects litigants from the burden of relitigating an action and promotes judicial economy by prohibiting needless litigation. *Id.* at 326, 99 S.Ct. at 649. To enhance these objectives, the res judicata doctrine extends from all matters raised in the first action to all matters that plaintiff could have raised to support his claim in the first action. *Federated Department Stores v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 2427, 69 L.Ed.2d 103 (1981). This extension complements the modern expansion of joinder and discovery, which help ensure that a plaintiff secures a full and fair opportunity to present his case in court. *See, e.g., Heiser v. Woodruff*, 327 U.S. 726, 66 S.Ct. 853, 90 L.Ed. 970 (1946).

█ Nonetheless, due to the danger of a "wooden application" of the doctrine, the Supreme Court has emphasized that a court should carefully consider the facts at issue before it erects the bar of res judicata. *Brown v. Felsen*, 442 U.S. 127, 132, 99 S.Ct. 2205, 2209, 60 L.Ed.2d 767 (1979). Towards that end, defendant must demonstrate that: (1) the court rendered a final judgment on the merits in the prior case; (2) the prior suit involved the same parties or their privies; and (3) the plaintiff bases the subsequent suit on the same causes of action. *NLRB v. United Technologies Corp.*, 706 F.2d 1254, 1259 (2d Cir.1983).

**2.** "[The] inspection reports prepared by the RPIA were fraudulent reports. The RPIA reports were altered and re-written by the RPIA inspectors ... Plaintiffs have obtained actual proof that the RPIA reports were re-written and fraudulent ... Inspection reports prepared by the MDT were also altered ... Thus, Conrail *relied* on re-written and fraudulent information in denying plaintiffs' claims." *See* Comp. ¶¶ 9, 10, 11, 12 (emphasis in original).

### 1. The ERA Case

The ERA case most clearly raises the res judicata bar. First, the court in that case reached a final judgment on the merits since it granted summary judgment on behalf of defendants on all of plaintiffs' claims. The court specifically dismissed the plaintiffs' fraud claim, which is identical to the claim made in the present case. *G & T Terminal Packaging Co. v. Smith,* No. 14383/83–002, slip. op. at 2–3. Under New York law, such a judgment constitutes a "final judgment on the merits" for the purposes of res judicata. *See, e.g., Strange v. Montefiore Hospital & Medical Center,* 59 N.Y.2d 737, 739, 463 N.Y.S.2d 429, 430, 450 N.E.2d 235, 236 (1983).

Second, although the parties in the present litigation are not identical to the parties in the ERA case, their relationship suffices for the purposes of res judicata. Privity between two parties fulfills the doctrine's requirement of identity of parties; identity of parties encompasses all individuals whose interests were represented adequately in prior litigation by another with the authority of representation. *Expert Electronic Inc. v. Levine,* 554 F.2d 1227, 1233 (2d Cir.1977), *cert. denied,* 434 U.S. 903, 98 S.Ct. 300, 54 L.Ed.2d 190 (1977); *Ellentuck v. Klein,* 570 F.2d 414, 426 (2d Cir.1978). In *Expert Electronic,* the court barred various contractors' claims because the trade association to which they belonged adequately represented their interests in prior litigation based on the same factual predicate. *Id.* The contractors had vested the trade association with the authority to represent their interests. *Id.* at 1234. As in *Expert Electronic,* the ERA sufficiently represented Conrail's interests, as Conrail of course admits. Conrail belonged to the ERA just as the contractors

in *Expert Electronic* belonged to the trade association implicated by that case. Furthermore, Conrail relied upon the RPIA—a subdivision of the ERA—to inspect all of its deliveries of perishable produce.[3]

Finally, plaintiffs base their present suit upon the "same cause of action" as that presented in the ERA case. The Second Circuit has adopted a broad view of what constitutes the same cause of action. Actions need not be identical; they only need be integrally related. In assessing claims, the Court considers several related factors, not one of which is necessarily dispositive, including: (1) whether the same transaction or connected series of transactions is at issue; (2) whether the same evidence is needed to support both claims; and (3) whether the facts essential to the second action were present in the first. *NLRB,* 706 F.2d at 1260. The ERA case and the present case meet the requirements of claim identity. In both cases plaintiffs alleged the use of fraudulent inspection reports and relied upon RPIA inspectors' testimony and examples of altered reports to prove their claims.

For the reasons set forth above, the Court bars G & T's action against Conrail on the grounds of res judicata.

### 2. The G & T and Second MDT Cases

The relationships between the present case and the G & T and MDT cases also support the dismissal of the plaintiffs' claim on the grounds of res judicata. Both cases fulfill the requirement of a final judgment on the merits. The Third Circuit dismissed the plaintiff's common law rate discrimination claims because they "lacked merit" in the G & T case. *G & T Terminal Packaging Co.,* 830 F.2d at 1236. The

---

**3.** Plaintiffs incorrectly argue that this relationship does not suffice to establish identity of parties because the ERA's relationship with Conrail does not parallel the examples of privity provided in *Green v. Santa Fe Industries, Inc.,* 70 N.Y.2d 244, 519 N.Y.S.2d 793, 796, 514 N.E.2d 105, 108 (1987). This Court's conclusion does not, however, conflict with *Green.* The inquiry concerning identity of parties is an issue of "substance rather than the names in the caption of a case; the inquiry is not limited to the

traditional privity analysis." *Jericho News Inc. v. The New York Times Company,* 876 F.2d 266, 270 (2d Cir.1989). Therefore, *Green*'s list of traditional privity examples is not exhaustive and does not exclude the present case from the application of res judicata. Because the Court has established that the ERA, pursuant to its delegated authority, adequately represented Conrail's interests in the ERA case, the principles of res judicata properly bar plaintiffs' argument here.

New Jersey District Court dismissed the plaintiffs' claim in the second MDT case as untimely and on the grounds of res judicata.

▮ The G & T and second MDT cases also fulfill the res judicata requirement of identity of parties. Simply put, G & T and Conrail were parties in both the G & T case and the present case. Similarly, in the second MDT case, G & T filed a claim against MDT, a subsidiary of Conrail. Subsidiaries are in privity with their principal for res judicata purposes when, as here, they sufficiently represent the principal's interests. *See Teltronics Services v. Anaconda Ericsson, Inc.*, 762 F.2d 185, 191 (2d Cir.1985).

▮ Furthermore, the G & T and MDT cases present similar causes of action as does the present case. All three cases depend upon an allegedly wrongful attempt to deny plaintiffs their right to compensation for damages, regardless of whether plaintiffs alleged reliance upon fraudulent inspection reports. A final judgment is res judicata not only for all matters pleaded, but all matters that might have been pleaded, which is to say, for "all relevant issues which could have been but were not raised and litigated in the suit." *In re Interstate Stores*, 558 F.2d 1046, 1047 (2d Cir.1977) (citation omitted). *See also Teltronics v. L.M. Ericsson Telecommunications*, 642 F.2d 31, 35 (2d Cir.1981). In dismissing the second MDT case, Judge Sarokin followed this reasoning, which this Court also finds persuasive. G & T should have raised the issue of fraudulent RPIA reports in its attempt to establish the illegality of the disputed surcharge in the G & T case. This issue was "so integrally related to the prior action [i.e. the G & T case] that the plaintiffs should have been required to have brought the two claims in the same law suit." *Mr. Sprout, Inc. v. Merchants Despatch Transportation Corp.*, No. 87-1574, slip op. at 10.

The court also recognizes the present claim's relationship to the MDT case as sufficient evidence of the "same cause of action" requirement. Just as plaintiffs could have raised the fraud claims in the G & T case, so too could they have raised the claims in support of their argument in the MDT case. As Judge Sarokin explained, plaintiffs' discovery of adulterated reports was integrally related to their need to see MDT's reports in order to determine their validity. Plaintiffs easily could have raised this related matter in the second MDT case.

Plaintiffs also had a full and fair opportunity to litigate their case in the prior actions. *See, e.g., Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 481, 102 S.Ct. 1883, 1897, 72 L.Ed.2d 262 (1982). Throughout 1985 and 1986, plaintiffs engaged in discovery in the ERA and G & T cases. This opportunity yielded affidavits by various RPIA and MDT inspectors attesting to the alleged falsification of reports. Plaintiffs then had the opportunity to present this evidence to the courts, which subsequently dismissed the actions.

### 3. Collateral Estoppel

▮ The present action also is barred on the grounds of collateral estoppel. Collateral estoppel prevents the relitigation of an issue that was raised, litigated, and decided in a prior proceeding. *Balderman v. United States Veterans Administration*, 870 F.2d 57, 62 (2d Cir.1989). Unlike res judicata, however, collateral estoppel precludes the relitigation of conclusively determined issues even if the plaintiff bases the subsequent suit on a different cause of action. *See Balderman*, at 62.

▮ The establishment of collateral estoppel requires: (1) that the issue was not only litigated but also was necessary to the outcome of the prior action; and (2) that the litigant had a full and fair opportunity to litigate his case. *See, e.g., Kaufman v. Eli Lilly and Co.*, 65 N.Y.2d 449, 455, 492 N.Y.S.2d 584, 588, 482 N.E.2d 63, 67 (1985); *Parklane*, 439 U.S. at 326, n. 5, 99 S.Ct. at 649, n. 5. Applying that standard, the Court concludes the ERA and MDT cases bar relitigation of the allegedly fraudulent inspection reports.

▮ That very issue played an integral role in plaintiffs' prior and present com-

plaints.[4] Not only was it fully litigated, but it also was necessary to the outcome of the ERA action. And the Court already has found that plaintiffs had a full and fair opportunity to litigate the fraud issue in the ERA case.[5] G & T also litigated this issue in the second MDT case and its litigation was necessary to the outcome of that case as well.[6]

Finally, plaintiffs argue that their case merits reconsideration because of recent evidence of fraudulent activity. This argument is without merit: "Afterthoughts or after discoveries however understandable and morally forgivable are generally not enough to create a right to litigate anew." *Reilly v. Reid,* 45 N.Y.2d 24, 28, 407 N.Y. S.2d 645, 648, 379 N.E.2d 172, 175 (1978). Relitigation of the fraud issue in the present action would defeat the overall objectives of the doctrines of collateral estoppel and res judicata.

## B. Conrail's motion for sanctions

Defendant also moves for the imposition of sanctions pursuant to Fed.R.Civ.P. 11 and 28 U.S.C. § 1927. Conrail claims that plaintiffs and their counsel filed and maintained a frivolous suit. Conrail also asks this court to enjoin the plaintiffs from filing suits in the future related to the issues raised in the present action pursuant to 28 U.S.C. § 1651. For the reasons stated below, the Court grants the defendant's motion for sanctions and denies defendant's motion for an injunction.

Under Rule 11, an attorney's signature on a motion signifies

that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it [a pleading, motion, or other paper] is well grounded in fact and is warranted by existent law or a good faith argument for extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause any unnecessary delay or needless increase in the cost of litigation.

The Second Circuit has held that the court shall impose sanctions whenever "it is patently clear that a claim has absolutely no chance of success." *Eastway Constr. Corp. v. City of New York,* 762 F.2d 243, 254 (2d Cir.1985), *cert. denied,* 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987). District courts have wide discretion under Rule 11 because "the district court has tasted the flavor of the litigation and is in the best position to make these determinations." *Westmoreland v. CBS, Inc.,* 770 F.2d 1168, 1174 (D.C.Cir.1985).

At the same time, district courts must use caution when considering Rule 11 sanctions because Rule 11 is "not intended to stifle the enthusiasm or chill the creativity that is the very lifeblood of the law." *Eastway,* 762 F.2d at 254. Accordingly, the courts tend toward leniency when assessing a motion for Rule 11 sanctions. The Second Circuit has held that "courts must strive to avoid hindsight" and has mandated that "any and all doubts must be resolved in favor of the signer." *Id. See also, Nakash v. United States Dept. of Justice,* 708 F.Supp. 1354, 1368 (S.D.N.Y. 1988).

The present action presents a strong case for imposing sanctions. Rule 11 requires the imposition of sanctions where, after a reasonable inquiry, a competent attorney could not have formed a reasonable belief that the pleading was well grounded in fact and was warranted by existing law. *See Eastway,* 762 F.2d at 254 ("[Litigants must not manipulate] the federal court system for ends inimicable to those for which it was created.") In the present action, a reasonable inquiry into the facts and the law regarding res judicata and collateral estoppel could not have given plaintiffs' attorney reason to believe that the present complaint merited consideration. In light of the history of consistent summary judgment dismissals of all of

---

4. *Compare, e.g.,* Comp. ¶ 9 *with* ERA Comp. ¶ 15.

5. Since collateral estoppel focuses upon issue preclusion and not the parties to the action, the possibility that ERA and Conrail constitute different parties remains immaterial.

6. *Compare, e.g.,* Comp. ¶ 11 with MDT Comp. ¶ 14.

plaintiffs' prior claims against parties related to and including Conrail, plaintiffs' attorney should have realized that the Court would dismiss the present action. In particular, the dismissal of the fraud claim in the ERA case and the dismissal of the second MDT case on the grounds of res judicata provided sufficient warning that further litigation would be futile.

Plaintiffs' proposal to pay Conrail's expenses if they cannot prove that the allegations made in their complaint are true does not provide an appropriate basis for refusing to impose sanctions. First, Rule 11 serves not only to compensate the aggrieved party, but also to deter future abuse of the judicial process. *See Eastway,* 762 F.2d at 254. Second, plaintiffs' ability to argue the underlying merits of their fraud claim has no bearing on the present motion for sanctions. Regardless of plaintiffs' belief in the validity of their fraud claim, a reasonable inquiry should have warned them that they could not relitigate this claim given the familiar doctrines of res judicata and collateral estoppel. Accordingly, the Court grants Conrail's motion for sanctions.

Conrail shall have ten days from the date of this Order to submit to plaintiffs and this Court an affidavit setting forth its reasonable costs and attorney fees connected to this action. Plaintiffs shall have one week from the receipt of Conrail's affidavit to respond.

Pursuant to 28 U.S.C. § 1651, this Court can enjoin plaintiffs from relitigating repetitious or baseless actions. The Court employs this provision in order to protect and effectuate its judgments. *See Ward v. Pennsylvania New York Central Transportation Co.,* 456 F.2d 1046, 1048 (1972). This Court concludes that such an extraordinary remedy need not be employed. The imposition of sanctions will adequately effectuate the Court's decision and address defendant's concerns.

### III. CONCLUSION

For the reasons set forth above, the Court grants defendant Conrail's motion for summary judgment and for sanctions, and denies its request for an injunction. The parties shall follow the schedule outlined above for the filing of further affidavits.

SO ORDERED.