**Arnold R. LEVY, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**UNITED STATES of America, Third–Party Plaintiff,**

v.

**Carole P. LEVY, Third–Party Defendant.**

No. 87 Civ. 6602 (DNE).

United States District Court, S.D. New York.

Nov. 6, 1991.

832

Epstein, Becker & Green, P.C., New York City (Rona Klein, of counsel), for plaintiff.

Otto G. Obermaier, U.S. Atty., S.D.N.Y. (Bernard W. Bell, Asst. U.S. Atty., of counsel), for U.S.

## OPINION AND ORDER

EDELSTEIN, District Judge:

### Background

Plaintiff Arnold Levy has brought this action to obtain a tax refund from the United States. He alleges that he overpaid taxes in 1983 because the Internal Revenue Service (the "IRS") awarded a tax credit to his former wife, Carole Levy, that it should have awarded to him. The dispute concerns payments relating only to tax year 1983. In that year, while still married, the Levys made estimated tax payments of $14,000 against their 1983 joint tax liability. A portion of this sum derived from applying a $2,000 IRS credit to their 1983 tax liability.[1] The remainder consisted of three payments of $4,000 each, which were made on June 15, 1983, September 15, 1983 and January 14, 1984.

The June 15 payment was drawn on an account maintained by Mrs. Levy at Rowe Price Prime Reserve Fund, Inc. Mrs. Levy owned the funds in this account before her marriage. The final two payments were drawn on accounts that Mrs. Levy maintained at Scarsdale National Bank and Citibank. Unlike the funds in the Rowe Price account, however, Mr. Levy provided all or part of the funds in the Scarsdale National and Citibank accounts.

Because of marital difficulties the Levys filed separate returns in 1983.[2] Both Mr. and Mrs. Levy obtained extensions of time to file their 1983 returns until August 15, 1984. Mr. Levy ultimately obtained a second extension until October 15, 1984. Mrs. Levy's separate 1983 return, which she filed on August 9, 1983, claimed $8,000 of the joint estimated tax payments as a credit against her separate 1983 tax liability of $143.[3] The IRS granted Mrs. Levy this $8,000 credit on October 8, 1984, and after subtracting her 1983 income from the credit, issued Mrs. Levy a refund of $7,857.

Mr. Levy's 1983 tax return, which he filed on October 15, 1984, claimed a credit for the entire $14,000 in estimated tax payments. On this return, Mr. Levy claimed taxable income of $50,599, a tax liability of $13,854 and a tax credit of $14,000. At the time of filing, Mr. Levy alleges that he was unaware that his wife had claimed and the IRS had granted her an $8,000 tax credit.

1. They obtained this credit from having overpaid their 1982 tax liability.

2. Mr. Levy left the marital domicile in November 1983 and the Levys were divorced on March 13, 1986. Plaintiff alleges that Mrs. Levy filed separately without plaintiff's knowledge or consent.

3. Mrs. Levy apparently reasoned that she was entitled to $8,000 of the $14,000 in payments because the initial $4,000 payment came from an account to which she provided all the funds, and because she believed that was entitled to a credit for half of the remaining two payments.

By notice dated December 24, 1984, however, the IRS informed Mr. Levy that he was entitled to a credit of only $6,000, and therefore, he had underpaid his 1983 taxes by $8,000. Accordingly, the IRS demanded and Mr. Levy paid $8,000 plus interest to the IRS, which totalled $9,142.

On June 14, 1984, Mrs. Levy commenced a divorce proceeding against Mr. Levy in Supreme Court of the State of New York, Westchester County. Although Mr. Levy filed an answer on November 9, 1984, he subsequently filed an amended answer on January 15, 1985 to assert a counterclaim against Mrs. Levy. The counterclaim alleged that Mrs. Levy unlawfully converted $8,000 that Mr. Levy had given her in order to make the last two joint estimated tax payments. After examining Mrs. Levy's 1983 tax return and taking her deposition, however, Mr. Levy learned that his wife had paid the $8,000 in question but had also claimed a credit for the $8,000 on her return. As a result, Arnold Levy moved for summary judgment on his counterclaim on the ground that Mrs. Levy filed a separate tax return without his knowledge in 1983 in order to claim the $8,000 credit. The Supreme Court of the State of New York denied his motion by order dated June 25, 1985.

On March 13, 1986, the Levys settled their matrimonial dispute and agreed to withdraw their claims against each other. *See* Stipulation at 3. The court entered a final judgment of divorce in which it gave full effect to the Levys' settlement. *See* Judgment of Divorce at 3. The settlement covered "any and all property or assets in either party's possession and control [and] every claim to support, maintenance, equitable distribution, and proprietorial rights." Stipulation at 2–3. Mrs. Levy received the marital domicile and also paid Mr. Levy $40,000; the parties divided all other marital property. Stipulation at 3–8. Mr. Levy acknowledges this, but contends that the settlement binds only Mr. Levy and his former wife. He asserts that at the time of the settlement, he intended to bring this refund action to determine whether he or his wife could claim the $8,000 tax credit.

In August 1985, Mr. Levy mailed a refund claim to the IRS in the amount of $7,920, which equalled 99% of the $8,000 deficiency, plus interest and penalties of $1,410.75. Mr. Levy claimed 99% of the credit because he allegedly earned almost all of the couple's 1983 taxable income. Apparently, Mr. Levy never informed the IRS of the couple's divorce settlement. When the IRS failed to act on his refund claim, Mr. Levy commenced the instant action. On November 20, 1987, defendant answered Mr. Levy's complaint and also filed a third-party action against Mrs. Levy for indemnification in the event that it is liable to Mr. Levy. Discovery in this action is complete.

The United States has moved for summary judgment pursuant to Federal Rule of Civil Procedure 56 on the grounds that: (1) under Internal Revenue Code (the "Code") § 6015(c) and Treasury Regulation ("TR") 1.6015(b)–1(b), the settlement agreement between Mr. and Mrs. Levy had the power to and did award the $8,000 tax credit to Mrs. Levy; (2) the doctrine of res judicata bars this Court from adjudicating Mr. Levy's suit; and (3) Mr. Levy's claim is barred by the doctrine of laches. Mr. Levy has cross-moved for summary judgment under Code section 6015(c).

### Discussion

"It is well settled that a court should grant a motion for summary judgment only if the evidence, viewed in the light most favorable to the party opposing the motion, presents no genuine issue of material fact." *Cable Science Corp. v. Rochdale Village, Inc.,* 920 F.2d 147, 151 (2d Cir.1990); *see United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). The Supreme Court has noted that whether an issue is genuine and material for purposes of summary judgment depends on "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986). A

"court may grant summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

### A. The Doctrine of Res Judicata

■ Res judicata bars relitigation of issues between the same parties where a court of competent jurisdiction has rendered a final judgment on the merits. *See Milltex Indus. Corp. v. Jacquard Lace Co.,* 922 F.2d 164, 166 (2d Cir.1991); *O'Brien v. City of Syracuse,* 54 N.Y.2d 353, 445 N.Y.S.2d 687, 429 N.E.2d 1158 (1981); 1B J. Moore, J. Lucas & T. Currier, *Moore's Federal Practice* ¶ 0.406[1], at 266 (2d ed. 1988 & Supp.1990–91). The rule is based on the principle that "justice and fairness preclude [a party] from again litigating [the] same issue." *Mutual Fire, Marine & Inland Ins. Co. v. Fred S. James & Co.,* 92 A.D.2d 203, 208, 460 N.Y.S.2d 33 (1st Dep't 1983), *aff'd,* 61 N.Y.2d 680, 472 N.Y.S.2d 619, 460 N.E.2d 1104 (1984).

■ The rule is also linked to the full faith and credit policy, which counsels that the "judicial proceedings of any court of any ... State ... shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State." 28 U.S.C. § 1738. Under this principle, federal courts must give state court judgments the same preclusive effect they enjoy under the law of the state in which the judgment was rendered. *See Migra v. Warren City School Dist. Bd. of Education,* 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984); *Ruiz v. Commissioner of Dep't of Transp.,* 858 F.2d 898, 902 (2d Cir.1988). Mr. Levy, then, may not litigate claims in this Court if New York law would bar him from doing so in a subsequent state court suit. *See Genova v. Town of Southampton,* 776 F.2d 1560, 1561 (2d Cir.1985). Because New York's law of res judicata would prohibit Mr. Levy's suit if brought in

state court, this Court may not entertain his action.

■ Under New York law, the crucial issues in determining whether a claim is barred by a prior judgment are whether the present claim and the claim resolved in the prior judgment " 'are related in time, place, origin, or motivation, whether they form a convenient trial unit, and whether ... their treatment as a unit conforms to the parties' expectations.' " *Boronow v. Boronow,* 71 N.Y.2d 284, 525 N.Y.S.2d 179, 519 N.E.2d 1375 (1988) (quoting *Smith v. Russell Sage College,* 54 N.Y.2d 185, 192–93, 429 N.E.2d 746, 749, 445 N.Y.S.2d 68, 71 (1981)); *see also Gramatan Home Inv. Corp. v. Lopez,* 46 N.Y.2d 481, 485, 414 N.Y.S.2d 308, 386 N.E.2d 1328 (1979) ("[A]s to the parties in a litigation and those in privity with them, a judgment on the merits by a court of competent jurisdiction is conclusive [in any subsequent action] of issues of fact and questions of law necessarily decided.").

In *Boronow,* the New York Court of Appeals affirmed the dismissal of Mrs. Boronow's declaratory judgment action, in which she claimed a fifty percent ownership interest in the former marital domicile. Mrs. Boronow had filed for divorce, but did not, in the prior divorce proceeding, claim any ownership interest in the house. The court then entered a divorce decree in the first matrimonial proceeding.

In finding Mrs. Boronow's subsequent action barred under res judicata, the Court of Appeals noted that "in a matrimonial action, where the essential objective is to dissolve the marriage relationship, questions pertaining to important ancillary issues like title to marital property are certainly intertwined and constitute issues which generally can be fairly and effectively resolved with the core issue." *Boronow,* 71 N.Y.2d at 290, 525 N.Y.S.2d at 183, 519 N.E.2d at 1379. The court added that "[f]ragmentation in this area would be particularly inappropriate and counterproductive." *Id.* at 290–91, 525 N.Y.S.2d at 183, 519 N.E.2d at 1379; *see also Harrison v. Harrison,* 134 A.D.2d 567, 521 N.Y.S.2d 466, 467 (2d Dep't 1987) ("It is well settled

... that the dismissal of an action on the ground of res judicata is warranted where it concerns an issue of title which could have been, but was not, litigated in the prior matrimonial action."); *Scattoreggio v. Scattoreggio,* 115 A.D.2d 531, 496 N.Y.S.2d 57 (2d Dep't 1985). Accordingly, the court refused to reach the merits of Mrs. Boronow's action.

Similarly, in the Levys' matrimonial action, Mr. Levy raised the precise issue that he seeks to raise here. In that action, Mr. Levy moved for summary judgment on the claim that he was entitled to the $8,000 tax credit that his former wife claimed on her 1983 tax return. Mr. Levy could have pursued this claim in that action but simply elected not to do so. Under *Boronow* and *Harrison,* Mr. Levy's opportunity and subsequent failure to pursue the tax credit claim to a judgment on the merits precludes this Court from now adjudicating the identical claim.

■ While the state court never addressed the merits of Mr. Levy's claim, New York's res judicata doctrine bars litigation of title issues in matrimonial actions where the party had an opportunity to litigate the issue in a prior proceeding but failed to do so. In such instances, a judgment on the merits is not even required for application of res judicata. *See Boronow,* 71 N.Y.2d at 290, 525 N.Y.S.2d at 183, 519 N.E.2d at 1379; *Harrison,* 521 N.Y.S.2d at 467. Because Mr. Levy had the opportunity to litigate the tax credit issue in the Levys' state court suit, and even pursued the claim before agreeing to its settlement, he cannot now relitigate the identical issue before this Court.

Furthermore, res judicata bars Mr. Levy's suit because the tax credit claim was a part of a consent judgment entered in that action. As such, it has the same res judicata effect as a judgment on the merits. *See Canfield v. Elmer E. Harris & Co.,* 252 N.Y. 502, 505, 170 N.E. 121 (1930); *Reed v. Cohen,* 120 A.D.2d 598, 598, 502 N.Y.S.2d 497, 498 (2d Dep't 1986). In *Canfield,* the New York Court of Appeals stated that:

The general rules governing judgments apply to those taken by consent or upon stipulation which, in the case of individuals and private corporations, constitute a bar to the same extent as other judgments. A judgment by confession stands in much the same position as one by stipulation or consent and is conclusive adjudication of all matters embraced in it and a bar to any subsequent action on the same claim.

*Canfield,* 252 N.Y. at 505, 170 N.E. 121.

■ Finally, res judicata bars Mr. Levy's suit even though the original action involved Mr. and Mrs. Levy while the instant suit is between Mr. Levy and the Government. Traditionally, a party could invoke res judicata only if it had been a party to the prior action in which the relevant judgment had been entered. *See Nevada v. United States,* 463 U.S. 110, 143, 103 S.Ct. 2906, 2925, 77 L.Ed.2d 509 (1983); 18 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 4463, at 559-60 (1981) ("Wright & Miller"). Nevertheless, res judicata bars a second suit where privity exists among parties in the two actions. *See Alpert's Newspaper Delivery Inc. v. New York Times Co.,* 876 F.2d 266, 270 (2d Cir.1989); *Amalgamated Sugar Co. v. NL Indus., Inc.,* 825 F.2d 634, 640 (2d Cir.), *cert. denied sub nom., Rothenberg v. Amalgamated Sugar Co.,* 484 U.S. 992, 108 S.Ct. 511, 98 L.Ed.2d 511 (1987); *Green v. Santa Fe Indus., Inc.,* 70 N.Y.2d 244, 519 N.Y.S.2d 793, 796, 514 N.E.2d 105, 108 (1987).

■ The Second Circuit has stated that courts should flexibly apply the privity concept in determining whether claim preclusion exists. Res judicata may bar a second suit even in the absence of literal privity. *See Alpert's,* 876 F.2d at 270; *Amalgamated,* 825 F.2d at 640; *see also United States v. ITT Rayonier, Inc.,* 627 F.2d 996, 1003 (9th Cir.1980). "Privity ... represents a legal conclusion that the relationship between [the parties] is sufficiently close to [support] preclusion." *Southwest Airlines v. Texas Int'l Airlines,* 546 F.2d 84, 95 & n. 38 (5th Cir.), *cert. denied,* 434 U.S. 832, 98 S.Ct. 117, 54 L.Ed.2d 93 (1977). New York

has adopted the Restatement of Judgments' criteria for privity, under which parties are bound if their interests were represented in the former action. *See Home of Histadruth Ivrith, Inc. v. New York Facilities Dev. Corp.*, 114 A.D.2d 200, 498 N.Y.S.2d 883, 887 (3d Dep't 1986); Restatement (Second) of Judgments § 51(4); Restatement of Judgments §§ 81–90. "[I]dentity of parties encompasses all individuals whose interests were represented adequately by another...." *G & T Terminal Packaging Co. v. Consol. Rail Corp.*, 719 F.Supp. 153, 158 (S.D.N.Y.1989).

For instance, courts have found that parties in two separate actions are in privity for res judicata purposes where if the party in the second action is defeated, that party may seek indemnification from the party in the first action. "General principles of *res judicata* hold that a judgment entered in an action [involving] an indemnitor ... preclude a later action against an indemnitee, such as defendant, to the same extent as it precludes a second action against the indemnitor." *Soto v. United States Lines, Inc.*, 608 F.Supp. 904, 906 (S.D.N.Y.1985); *see also Headley v. Bacon*, 828 F.2d 1272, 1278 (8th Cir.1987) (citing Restatement, which is New York law, for proposition that judgment against injured party in one action generally bars subsequent action against those in vicarious liability relationship with [party] in first action); *Cullen v. Paine Webber Group, Inc.*, 689 F.Supp. 269, 279 (S.D.N.Y.1988) (same); *New Paltz Cent. School Dist. v. Reliance Ins. Co.*, 97 A.D.2d 566, 567, 467 N.Y.S.2d 937, 938 (3d Dep't 1983); 18 Wright & Miller, at 563.

Allowing claim preclusion is such instances is necessary to avoid having to choose between two unacceptable alternatives:

> If a second action can be maintained against the indemnitee, either the indemnitee must be allowed to assert his right of indemnification or the right must be defeated by the judgment in favor of the indemnitor. To allow the right of indem-

nification would be to destroy the victory won by the indemnitor in the first action. To deny the right of indemnification would be to destroy the indemnitee's right by the result of an action in which he took no part. It is far better to preclude the third person, who has already had one opportunity to litigate....

18 Wright & Miller, at 563–64; *see also Mertes v. Mertes*, 350 F.Supp. 472, 475 (D.Del.1972) (claim preclusion appropriate where any judgment necessarily would undo prior judgment), *aff'd*, 411 U.S. 961, 93 S.Ct. 2141, 36 L.Ed.2d 681 (1973).

Mr. Levy previously asserted a right to the disputed tax credit in the Levys' state court divorce proceeding. Having entered into a settlement of that action that allowed Mrs. Levy to claim the credit, Mr. Levy now seeks the same credit from the Government. If he were to prevail on this claim, however, the Government would have a right to seek indemnification from Mrs. Levy, and indeed, the Government has already impleaded Mrs. Levy seeking indemnification. Applying the indemnification line of cases, Mr. Levy's suit is barred under the doctrine of res judicata. This Court holds that a plaintiff who has litigated a claim in a prior action may not sue a new party on the same claim in a second action if that new party could seek indemnification from a litigant in the initial action. Accordingly, the Government's motion for summary judgment is granted and Mr. Levy's suit is dismissed.

**B. Internal Revenue Code § 6015(c)** [4]

Even if Mr. Levy's claim is not barred by the doctrine of res judicata, Mr. Levy has no right to the tax credit under Code section 6015(c). Section 6015(c) permits a husband and wife to make a single declaration of estimated joint tax liability. It further provides that "[i]f a joint declaration is made but a joint return is not made for the taxable year, the estimated tax for such year may be treated as the estimated tax of either the husband or the wife, or

---

**4.** Code § 6015 was repealed with respect to taxable years beginning after December 31, 1984. Section 6015 is, however, the governing law in the instant case, which involves tax year 1983. *See* Pub.L. No. 98–369 § 412(a)(1) (1984).

may be divided between them." 26 U.S.C. § 6015(c) (repealed 1984).

TR 1.6015(b)–1(b) provides the rule for allocating tax payments in the event that a husband and wife who have made joint declarations of estimated tax liability decide to file separate returns. The regulation allows a husband and wife to agree on an allocation of payments. If they fail to agree, the IRS is required to allocate the joint estimated tax payments based upon each spouse's percentage contribution to the couple's combined taxable income. *See* 26 C.F.R. 1.6015(b)–1(b). The issue before this Court, then, is whether in settling their matrimonial dispute the Levys agreed to an allocation of tax payments that awarded Mrs. Levy the $8,000 credit. Because this Court finds that the divorce agreement encompasses the $8,000 tax credit, and also finds that Mr. Levy's assertion to the contrary is untenable and does not present a genuine issue of fact in light of the uncontested evidence before this Court, the Government's summary judgment motion is granted and Mr. Levy's cross-motion for summary judgment is denied.

 Mr. Levy argues that he and his former wife never agreed on an allocation of the tax credit when they settled their divorce action because they never achieved a "meeting of the minds" as to this specific property. It is uncontested, however, that Mr. Levy agreed to all material terms of the divorce agreement. Under New York law, the settlement of a divorce action is a final resolution of all competing claims to the spouses' property. *See Boronow v. Boronow*, 71 N.Y.2d 284, 525 N.Y.S.2d 179, 519 N.E.2d 1375 (1988); *Rakowski v. Rakowski*, 109 A.D.2d 1, 5, 489 N.Y.S.2d 929, 932–33 (2d Dep't 1985). As such a final resolution of the dispute, the divorce settlement must be viewed as an agreement within the meaning of Code § 6015.

Moreover, the divorce settlement covered the tax credit. The scope of the agreement was very broad. It purported to cover "any and all property or assets in either party's possession or control" [and] "every claim to support, maintenance, equitable distribution, and proprietary rights." The tax credit, as property, falls within this broad language. Furthermore, while the agreement expressly exempted some property from this language, it did not except the tax credit. Because the Levys agreed to allocate their property, including the tax credit, pursuant to the terms of a divorce settlement, it is clear that under section 6015 they could and did determine which spouse had the right to claim the credit.

An examination of the settlement reveals that the parties agreed that Mrs. Levy had the right to the tax credit. The parties agreed in the divorce settlement to withdraw any property claims they had asserted against the other. One such claim was Mr. Levy's state court counterclaim, in which he alleged that his wife converted the $8,000 he had given her to make estimated tax payments. Upon learning that his former wife had indeed made these payments, Mr. Levy moved for summary judgment on the slightly different claim that his wife improperly claimed the $8,000 as a tax credit on her 1983 tax return. In other words, this specific property, the tax credit, was the subject of a claim in the settled action. By entering into a divorce settlement under which the parties withdrew all such property claims, Mr. Levy agreed to drop his demand for the tax credit.

Accordingly, Mrs. Levy is entitled to retain the $8,000 credit while Mr. Levy can claim a $6,000 credit. It is obvious to this Court that the Levys did achieve agreement as to the disposition of this credit; Mr. Levy's assertions to the contrary are unavailing and insufficient, in light of the undisputed facts, to constitute a genuine issue of fact.

*Conclusion*

The Government's motion for summary judgment is granted and the plaintiff's cross-motion for summary judgment is denied. This Court finds that plaintiff's suit is barred by the doctrine of res judicata, and, in the alternative, that plaintiff is not entitled to the tax credit under 26 U.S.C. § 6015(c). Because this Court rests its decision on two alternative grounds, it has

not addressed the Government's argument that plaintiff's suit is barred by the doctrine of laches. This case is dismissed.

SO ORDERED.