Martin CARLIN, Plaintiff,

v.

**GOLD HAWK JOINT VENTURE, Tom E. Purvis, Estate of Jack H. York, and William Clinton Weeden, Defendants.**

No. 91 Civ. 2937 (LBS).

United States District Court,
S.D. New York.

Nov. 14, 1991.

Martin Carlin, plaintiff pro se.

Gold & Wachtel, New York City, for defendants Gold Hawk Joint Venture, Tom E. Purvis and Estate of Jack York (Michael S. Etkin, of counsel).

SAND, District Judge.

This case arises out of a dispute concerning the default of Gold Hawk Investments Company [hereinafter "GHIC"] on mortgage payments owed on commercial real estate which had been purchased by GHIC from defendant Gold Hawk Joint Venture

[hereinafter "GHJV"]. GHIC was a Texas joint venture composed of the plaintiff in this action, Martin Carlin, Vlad Stevens, and Steve Stevens, Jr. Defendant GHJV was also a Texas joint venture composed of defendants Tom E. Purvis and William Clinton Weeden, and Jack H. York.[1] In 1987, a judgment of almost eight million dollars was entered against GHIC and its individual joint venturers, including plaintiff, in the federal district court for the Northern District of Texas.

In April of 1991, plaintiff brought this latest action in a series of litigations challenging this judgment in the New York Supreme Court, Bronx County, and filed a Notice of Pendency with the County Clerk of Westchester County. On April 30, defendants GHJV, Purvis, and Estate of Jack York removed the action to this Court. Defendants now move to dismiss the complaint with prejudice primarily on the ground of res judicata and to cancel the Notice of Pendency. They also seek a permanent injunction, costs and sanctions against plaintiff. For the reasons discussed below, the motion to dismiss the complaint and cancel the Notice of Pendency is granted. Defendants' request for an injunction, costs and sanctions is denied.

## I. BACKGROUND

### A. *Underlying Facts*

In August of 1986, GHIC purchased five Houston shopping centers from GHJV, and assumed the mortgages and notes on these properties which were payable to other lenders, including a $5,507,966.51 promissory note due to the Sunrise Savings & Loan Association [hereinafter "Sunrise"]. However, defendants remained responsible for the mortgages if GHIC failed to meet its obligations. Complaint ¶ 15; Memorandum Opinion, CA4–87–205–K, *Gold Hawk Joint Venture v. Gold Hawk Investments Co.*, (N.D.Tex. March 7, 1988), at 2 [hereinafter "Memorandum Opinion"]. At some point thereafter, GHIC defaulted on the note due to Sunrise. Complaint ¶ 17. The lenders

then accelerated the mortgages and instituted foreclosure proceedings on the shopping centers, as well as other property owned by the defendants which had served as additional collateral on the Sunrise note. Complaint ¶¶ 9–13; Memorandum Opinion at 2.

### B. *Procedural History*

On March 26, 1987, GHJV sued GHIC, Carlin, Vlad Stevens and Steve Stevens, Jr. in the United States District Court for the Northern District of Texas for damages suffered from GHIC's default. On May 19, 1987, after an inquest hearing, judgment was entered against all the defendants in that action jointly and severally in the amount of $7,903,519.42 with interest at 11.5% per annum from the date of judgment, and $25,000 in attorneys' fees. [hereinafter "the Judgment"]. The Judgment was docketed in the United States District Court for the Southern District of New York on July 14, 1987, and in the Supreme Court of the State of New York, Westchester County, on July 23, 1987. *See* Etkin Affidavit in Support of Motion to Dismiss Complaint, Cancel Notice of Pendency and for a Permanent Injunction, May 7, 1991, at 2–3 [hereinafter "Etkin Affidavit"].

In September 1987, GHJV commenced enforcement proceedings on the Judgment in the Supreme Court of the State of New York, Westchester County in an action directed at real property owned there by Carlin. In his answer to the Complaint filed in that enforcement action, Carlin challenged the validity of the Judgment and on October 29, 1987, he obtained a stay of execution while he moved in Federal Court in the Northern District of Texas to vacate the Judgment. *See* Proceedings before the Honorable Vincent A. Gurahian, Supreme Court of the State of New York, County of Westchester, *Application of Gold Hawk Joint Venture for a Judgment Pursuant to CPLR 5206 for a Sale of Homestead Exceeding Ten Thousand Dol-*

---

**1.** Mr. York died before the present action was brought, and his estate is a named defendant in

this action. *See* Complaint ¶ 4.

lars v. Martin Carlin, Index No. 18232/87, (Oct. 29, 1987), at 2, annexed to Etkin Affidavit as Exhibit B [hereinafter "Application of Gold Hawk Joint Venture"].

On November 16, 1987, Carlin and the other defendants in the Texas action moved to set aside the Judgment by Order to Show Cause in the Northern District of Texas. *See* Order to Show Cause, *Gold Hawk Joint Venture v. Gold Hawk Investments Co.,* CA4–87–205–K, (N.D.Tex. Nov. 6, 1987), annexed to Etkin Affidavit as Exhibit C. On March 7, 1988, the Court denied Carlin's motion and upheld the Judgment. *See* Memorandum Opinion. To execute on the Judgment, one of plaintiff's New York properties, 175 Crary Avenue, Mt. Vernon, NY, was sold at a Sheriff's sale, at which GHJV was the successful bidder. Carlin appealed the district court's decision to the United States Court of Appeals for the Fifth Circuit, which affirmed the lower court. *See Gold Hawk Venture v. G. H. Investment,* 869 F.2d 1486 (5th Cir.1989). Judge Gurahian subsequently granted GHJV summary judgment in the enforcement action.

On April 5, 1990, Carlin filed a complaint in the Supreme Court of the State of New York, Westchester County, challenging the Judgment on the grounds that the cause of action was not ripe for adjudication. This complaint was dismissed on the grounds of res judicata and that the Judgment was not subject to collateral attack. *See* Decision and Order, *Carlin v. Gold Hawk Joint Venture, Free Lunch, Inc., the State of New York, and the United States of America,* No. 6113–1990, Supreme Court of the State of New York, County of Westchester, (Feb. 28, 1991), annexed to Etkin Affidavit as Exhibit E.

On April 1, 1991, Carlin filed the present complaint in the New York Supreme Court, Bronx County and a Notice of Pendency on the Crary Avenue property with the County Clerk of Westchester County. In the present action, plaintiff asks for indemnification from any judgment entered against him by the FDIC as receiver of Sunrise in a suit now pending against both plaintiff and defendants, and asks that GHJV be en-joined from selling the Crary Avenue property and other New York property obtained from him unless and until judgment is entered against GHJV in the FDIC action. Plaintiff further requests that if judgment is entered against GHJV in that action, GHJV be directed to partially satisfy that judgment by transferring its interest in the New York properties to the FDIC. Finally, plaintiff asks that if the FDIC suit is dismissed or satisfied for less than the fair market value of his New York properties, that those properties, or the difference in value, be returned to him. The action was removed to this Court on April 30, 1991. On May 7, 1991 defendants GHJV, Purvis, and Estate of Jack H. York moved to dismiss the complaint, cancel the Notice of Pendency, and award a permanent injunction against plaintiff under Fed.R.Civ.P. 65. Plaintiff has not responded to this motion.

## II. DISCUSSION

In considering a motion to dismiss for failure to state a claim, the Court must take plaintiff's allegations as true. *See Hospital Building Co. v. Trustees of Rex Hospital,* 425 U.S. 738, 740, 96 S.Ct. 1848, 1850, 48 L.Ed.2d 338 (1976); *Miree v. DeKalb County,* 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492 n. 2, 53 L.Ed.2d 557 (1977). The Court must construe the complaint in a manner favorable to the non-moving party. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The Court should dismiss the complaint only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957) (footnote omitted); *Goldman v. Belden,* 754 F.2d 1059, 1065 (1985).

### A. *Res Judicata*

Defendants argue that the doctrine of res judicata prevents the present litigation and that therefore plaintiff's complaint must be dismissed for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6); *see* Etkin Affidavit at 2. Defendants allege that the issues raised

in the present complaint have been fully adjudicated in the federal courts in Texas and in the state courts of New York. *See* Memorandum of Law in Support of the Motion of the Gold Hawk Defendants to Dismiss the Complaint, Cancel the Notice of Pendency, and Award a Permanent Injunction, May 7, 1991, at 6–7 [hereinafter "Memorandum of Law"].

### 1. *The Prior Federal Action*

#### a. Federal Preclusion Law is Controlling

■ Under the doctrine of res judicata, a final judgment on the merits bars the parties or their privies from relitigating issues that were or could have been raised in that action. *Federated Department Stores v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 2427, 69 L.Ed.2d 103 (1981); *Amalgamated Sugar Co. v. NL Industries, Inc.*, 825 F.2d 634, 639 (2d Cir.), *cert. denied*, 484 U.S. 992, 108 S.Ct. 511, 98 L.Ed.2d 511 (1987). The Texas action was litigated in federal court under diversity jurisdiction. 28 U.S.C. § 1332(a)(1). The present action is also before this Court pursuant to Section 1332(a)(1). When a prior action is decided under federal question jurisdiction, it is clear that federal law is used to determine its res judicata effect. However, there is a split in authority over whether the effect of the prior diversity judgment should be evaluated under federal or state preclusion law. *See Johnson v. Eli Lilly and Co.*, 689 F.Supp. 170, 172 (W.D.N.Y.1988) (noting split in circuits and listing cases).

While the Second Circuit has not ruled on this issue, it has suggested in dictum that federal law should apply. *See Gelb v. Royal Globe Insurance Co.*, 798 F.2d 38, 42 n. 3 (2d Cir.1986), *cert. denied*, 480 U.S. 948, 107 S.Ct. 1608, 94 L.Ed.2d 794 (1987). In *Gelb*, Judge Newman stated:

> [T]he Supreme Court has required the federal courts to give state judgments such collateral estoppel and *res judicata* effect as would the courts of the rendering state. This rule applies even where the state judgment adjudicates federal questions. Thus, a state court's power to declare the victor in a particular con-

troversy includes the power to define the scope of the victory. It would seem that federal courts must possess an equivalent power and that federal law should determine the preclusive effect of a federal judgment, without regard to the basis of jurisdiction.

*Id.* (citations omitted); *see also Phoenix Canada Oil Co. v. Texaco Inc.*, 749 F.Supp. 525, 533 n. 12 (S.D.N.Y.1990) (applying federal law to measure preclusive effect of prior federal diversity judgment); *Johnson v. Eli Lilly and Co.*, 689 F.Supp. 170, 172–73 (W.D.N.Y.1988) (similarly).

In *Johnson*, the court further explained that the interest in protecting a federal diversity judgment is "primarily federal in nature" and that the application of federal preclusion law in this situation would not undermine the central interests that the *Erie* doctrine was meant to protect: the state's interest in having its law applied in what would be a state action but for the existence of diversity jurisdiction, and elimination of the tendency for forum shopping. *Johnson*, 689 F.Supp. at 173.

It is also worth noting that the Fifth Circuit, where the prior litigation in the case before us occurred, has adopted the position that federal law should determine the preclusive effect of a prior federal diversity judgment in a subsequent diversity action. *See Aerojet–General Corporation v. Askew*, 511 F.2d 710, 716–18 (5th Cir.), *cert. denied*, 423 U.S. 908, 96 S.Ct. 210, 46 L.Ed.2d 137 (1975).

For all of the above reasons, we believe that it is appropriate to apply federal preclusion law in the present action. We note, however, that the use of Texas law, the applicable state law here, would make no difference to the outcome of this case. The standard of res judicata applied under Texas law appears essentially similar to that utilized in federal preclusion law: "[t]he judgment in the first suit precludes a second action by the parties and their privies not only on matters actually litigated, but also on causes of action or defenses which arise out of the same subject matter and which might have been litigated in the first suit." *Texas Water Rights Commission v.*

*Crow Iron Works*, 582 S.W.2d 768, 771–72 (Tex.1979); *see also Gracia v. R.C. Cola-7–Up Bottling Co.*, 667 S.W.2d 517, 519 (Tex.1984); *Slatton v. Brazoria County Protective Services Unit*, 804 S.W.2d 550, 553 (Tex.Ct.App.1991).

b. Application of Federal Preclusion Law to this Action

 Res judicata prevents litigation of all grounds for recovery or defenses to it that were previously available to the parties, whether or not they were asserted or determined in the prior proceeding. *Brown v. Felsen*, 442 U.S. 127, 131, 99 S.Ct. 2205, 2209, 60 L.Ed.2d 767 (1979); *Bin Saud v. Bank of New York*, 734 F.Supp. 628, 632 (S.D.N.Y.1990), *aff'd*, 929 F.2d 916 (2d Cir.1991). It is a judicially created doctrine of "fundamental and substantial justice" that encourages certainty and reliance on judicial decisions, and promotes judicial economy. *Federated Department Stores*, 452 U.S. at 401, 101 S.Ct. at 2429 (quoting *Hart Steel Co. v. Railroad Supply Co.*, 244 U.S. 294, 299, 37 S.Ct. 506, 507, 61 L.Ed. 1148 (1917)); *Brown v. Felsen*, 442 U.S. at 131, 99 S.Ct. at 2209. To support a finding of res judicata, the defendant must demonstrate that:

(1) the court rendered a final judgment on the merits in the prior case; (2) the prior suit involved the same parties or their privies; and (3) the plaintiff bases the subsequent suit on the same causes of action.

*G & T Terminal Packaging v. Consolidated Rail Corp.*, 719 F.Supp. 153, 157 (S.D.N.Y.1989), (citing *NLRB v. United Technologies Corp.*, 706 F.2d 1254, 1259 (2d Cir.1983)).

 The first requirement, that the prior Texas litigation resulted in a final judgment on the merits, is clearly satisfied, and does not necessitate prolonged discussion here. Second, the doctrine of res judicata requires that the subsequent action involve the same parties or those in privity with parties to the first suit. For the purposes of res judicata, the doctrine of privity "is to be applied with flexibility." *Amalgamated Sugar Co. v. NL Industries, Inc.*, 825 F.2d 634, 640 (2d Cir.1987); *see also Cahill v. Arthur Andersen & Co.*, 659 F.Supp. 1115, 1120–21 (S.D.N.Y.1986), *aff'd*, 822 F.2d 14 (2d Cir.1987). Privity exists when the interests of the nonparty were adequately represented in the first action. *Amalgamated Sugar Co.*, 825 F.2d at 640; *Expert Electric, Inc. v. Levine*, 554 F.2d 1227, 1233 (2d Cir.), *cert. denied*, 434 U.S. 903, 98 S.Ct. 300, 54 L.Ed.2d 190 (1977); *Index Fund, Inc. v. Hagopian*, 677 F.Supp. 710, 715 (S.D.N.Y.1987).

The relationship of the parties in the present action to those in the prior Texas litigation is sufficient to meet the identity of parties requirement. GHJV, a defendant here, was the plaintiff in the Texas action. The individual defendants, Tom Purvis, Estate of Jack York, and William Weeden, were not named parties in the prior action. However, Purvis, York, and Weeden were the joint venturers who composed GHJV. As such, their interests were certainly represented by the entity of GHJV in the prior action.

 Third, it is also clear that the present claim is based upon the same cause of action presented in the Texas litigation. Under the Second Circuit's transactional approach, the actions need be only related and not identical. *Bin Saud v. Bank of New York*, 734 F.Supp. at 632 (citing *G & T Terminal Packaging Co., Inc. v. Consolidated Rail Corp.*, 719 F.Supp. 153, 157 (S.D.N.Y.1989)). The Court considers several related factors, including whether the same transaction or series of transactions is at issue, whether the same evidence is required for both claims, and whether the facts necessary to the second action were present in the first. *Id; see also Phoenix Canada Oil Co. v. Texaco, Inc.*, 749 F.Supp. 525, 533–34 (S.D.N.Y.1990).

The Texas litigation was a direct action to set aside the Judgment. This action is actually another challenge to the Judgment. In essence, plaintiff alleges that the Judgment was premature and therefore invalid, or alternatively that the amount of the Judgment is inflated. *See* Complaint ¶¶ 23, 33–36, 38–39. Plaintiff's requests

for indemnification, an injunction, and other actions derive from his challenge to the validity of the Judgment. For res judicata purposes, the present case is based on the same cause of action as the prior Texas litigation.

■ Res judicata bars the relitigation of issues that were or could have been raised in the prior action. Plaintiff's complaint here raises the same issues of ripeness and subsequent calculation of damages that were litigated and resolved in the Texas action. In the opinion denying the motion in the district court of the Northern District of Texas, Judge Belew stated that defendants:

> argue that the instant action is premature and until Sunrise (or, by operation of law, FSLIC) sues Defendants on the guaranty to Sunrise. With this contention, the Court cannot agree. In the Court's opinion, Plaintiff's complaint did indeed set out a valid ripe cause of action.

Memorandum Opinion at 18–19. The Judge declined to review the determinations of the damages hearing at this point. The Court noted that defendants had submitted a post-hearing letter including "what they characterized as new evidence suggesting that the calculation of damages was erroneous." Memorandum Opinion at 19 n. 33. The Court stated that though it was inclined to believe that such evidence was improperly before the Court, if the defendants presented it to the Court via an appropriate vehicle, the Court would consider modifying the Judgment at that time. *Id.* Mr. Carlin did raise this issue, as well as the ripeness issue, in his appeal to the Fifth Circuit Court of Appeals. *See* Exhibit A, at 29–33, annexed to the Memorandum of Law. This appeal was denied, and no petition for certiorari to the Supreme Court was filed. *See* Memorandum of Law, at 10–11. Clearly the issues now raised by the plaintiff were raised and resolved in the Texas litigation. Under the doctrine of res judicata, the current action is barred by the prior litigation in federal court.

### 2. The New York State Court Action

Carlin brought another action against GHJV and others in the Supreme Court of New York, Westchester County, in which he raised the ripeness issue. The court dismissed the action on res judicata grounds due to the Texas litigation. *See Carlin v. Gold Hawk Joint Venture, Free Lunch, Inc., the State of New York and the United States of America*, Index No. 6113–1990, (N.Y.Sup.Ct. Feb. 28, 1991). This decision provides additional confirmation that the doctrine of res judicata bars relitigation in the present action of the issues raised in the Texas suit.[2] However, even further, the New York state court decision is itself a prior proceeding which may have a preclusive effect on the current action.

■ In determining the preclusive effect of a state court decision, the federal courts are bound by the Constitution's Full Faith and Credit clause, as implemented by 28 U.S.C. § 1738.[3] It is well settled that "Section 1738 requires federal courts to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged." *Kremer v. Chemical Construction Corp.*, 456 U.S.

---

**2.** When the judge in the original enforcement proceeding in New York State Court ordered a stay of execution pending Carlin's motion to set aside the Judgment, he made clear that the denial of that motion would end all challenges to the validity of that Judgment in New York State courts:

> It is understood that in the event that the Texas Court upholds its judgment in favor of this Petitioner [GHJV] against this Respondent [Carlin], then that will terminate any and all defenses which Respondent may have here in connection with that judgment, although it does not prevent Respondent from asserting other defenses which it may have which are not based upon that underlying judgment. Application of Gold Hawk Joint Venture at 4.

**3.** The statute reads in pertinent part:

> Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

28 U.S.C. § 1738.

461, 466, 102 S.Ct. 1883, 1889, 72 L.Ed.2d 262 (1982); *Benjamin v. Coughlin*, 905 F.2d 571, 575 (2d Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 372, 112 L.Ed.2d 335 (1990). Accordingly, the preclusive effect in the Court of the action in New York State Supreme Court, Westchester County, is determined by New York law.

New York has adopted the transactional approach to res judicata that is used under federal law. Res judicata "prohibits a party from relitigating any claim which could have been or should have been litigated in a prior proceeding. Pursuant to the doctrine of res judicata 'once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy.'" *County of Nassau v. New York State Public Employment Relations Bd.*, 151 A.D.2d 168, 185, 547 N.Y.S.2d 339, 349 (App.Div.1989), *aff'd,* 76 N.Y.2d 579, 563 N.E.2d 266, 561 N.Y.S.2d 895 (1990) (quoting *O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 357, 429 N.E.2d 1158, 1159, 445 N.Y.S.2d 687, 688 (1981) (citations omitted)); *see also In the Matter of Louis Hodes v. Axelrod*, 70 N.Y.2d 364, 372–73, 515 N.E.2d 612, 616, 520 N.Y.S.2d 933, 937–38 (1987). The New York state court judgment dismissing the complaint with prejudice constitutes a final judgment on the merits. Plaintiff here was the plaintiff in the state court action and present defendant GHJV was a defendant in that action. As explained *supra*, the interests of the individual defendants here were sufficiently represented by GHJV in the prior action to consider them identical parties for res judicata purposes. Finally, the ripeness issue raised here is the same one that was raised in the prior state action. *See Carlin v. Gold Hawk Joint Venture, Free Lunch, Inc., The State of New York, and the United States of America*, Index No. 6113–1990, (N.Y.Sup.Ct. Feb. 28, 1991). Thus, the current action is precluded by the New York state judgment, as

well as the litigation in the federal courts of Texas.

For all of the foregoing reasons, it is clear that the doctrine of res judicata bars the present action. Finally, as we noted in a similar context, the fact that the plaintiff has proceeded *pro se* cannot alter this conclusion. *See Kent v. New York City Dept. of Sanitation*, 549 F.Supp. 570, 573 (S.D.N.Y.1982), *aff'd,* 722 F.2d 728 (2d Cir.), *cert. denied*, 464 U.S. 941, 104 S.Ct. 357, 78 L.Ed.2d 320 (1983). For, despite the federal courts' generally flexible approach to *pro se* pleadings, the *pro se* litigant must be bound by the same rules of law, including preclusion law, as those represented by counsel. *Id.* The defendants' motion to dismiss for failure to state a claim is therefore granted.[4]

Defendant William Weeden has previously filed a petition in bankruptcy and pursuant to section 362 of the Bankruptcy Code, all litigation activities relating to him or his property are stayed. 11 U.S.C. § 362; *see* Letter from Marshall Day, Esq. to Martin Carlin, April 2, 1991, annexed as Exhibit 2 to Verified Petition for Removal, Bronx County Index No. 8790–1991, April 30, 1991. This Court further notes however that res judicata precludes the present action against defendant Weeden, a joint venturer of Gold Hawk Joint Venture, and is therefore also dismissed as to him.

B. *The Notice of Pendency*

Because the motion to dismiss the complaint is granted, the Notice of Pendency must be cancelled. We do not think it is necessary to reach the question of proper service, and therefore we do not consider whether plaintiff should be enjoined from filing subsequent Notices of Pendency under New York CPLR § 6512.

C. *Injunction and Sanctions*

Defendants ask this Court to grant a permanent injunction barring plaintiff from bringing suit in any forum "against any of the defendants based on any issue

---

**4.** Though defendants make other allegations of lack of personal jurisdiction and improper service, our dismissal of the complaint pursuant to Fed.R.Civ.P. 12(b)(6) makes it unnecessary to reach these allegations.

previously litigated and adjudicated in the previous lawsuits" to which he was a party. Memorandum of Law at 17. It is well settled that federal courts possess the authority to enjoin parties from future vexatious litigation. 28 U.S.C. § 1651; *see In re Hartford Textile Corp.*, 681 F.2d 895, 897 (2d Cir.1982) (per curiam), *cert. denied,* 459 U.S. 1206, 103 S.Ct. 1195, 75 L.Ed.2d 439 (1983). Irreparable injury and inadequate remedy at law, the traditional measures for injunctive relief, are not applicable to injunctions against a vexatious litigant. *See Polur v. Raffe,* 912 F.2d 52, 57 (2d Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 1389, 113 L.Ed.2d 446 (1991); *In re Martin–Trigona,* 737 F.2d 1254, 1262 (2d Cir.1984). The federal courts have an institutional concern and obligation to "protect their jurisdiction from conduct which impairs their ability to carry out Article III functions." *In re Martin–Trigona,* 737 F.2d at 1261. In deciding whether to issue an injunction, the Court must determine if "a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties." *Safir v. United States Lines, Inc.,* 792 F.2d 19, 24 (2d Cir.1986), *cert. denied,* 479 U.S. 1099, 107 S.Ct. 1323, 94 L.Ed.2d 175 (1987); *see also In re Martin–Trigona,* 737 F.2d at 1262. However, as Judge Weinfeld noted in *Kane v. City of New York,* "litigious affinity alone does not support the grant of an injunction, for 'access to the Courts is one of the cherished freedoms of our system of government.'" *Kane v. City of New York,* 468 F.Supp. 586, 590 (S.D.N.Y.), *aff'd,* 614 F.2d 1288 (2d Cir. 1979) (quoting *Ex parte Tyler,* 70 F.R.D. 456, 457 (E.D.Mo.1975)).

 Plaintiff first litigated the issues of ripeness and calculation of damages in his action in the Northern District of Texas and appeal to the Fifth Circuit. He again raised these issues in New York state court in Westchester County, which was dismissed on res judicata grounds. Less than two months later, Carlin filed the present complaint in New York state court in Bronx County. At each stage, Mr. Carlin's attempts to invalidate the Judgment against him have been denied.

It is clear that at this juncture, Mr. Carlin's litigation has become duplicative, and that after this Court's dismissal of the present action he can no longer hold an objective good faith expectation of prevailing in any future litigation in this matter. However, denial of access to the Court is a serious matter and injunctions against such access must be issued only sparingly. *See Raffe v. John Doe,* 619 F.Supp. 891, 898 (S.D.N.Y.1985); *Kane v. City of New York,* 468 F.Supp. at 590. The history of this litigation to this point simply does not demonstrate the level of vexatiousness or harassment that has convinced the courts in this Circuit to issue such injunctions. *See, for e.g., In the matter of Hartford Textile Corp.,* 681 F.2d 895, 896–97 (2d Cir.1982) (issuing injunction after "almost unparalleled history" of over one hundred frivolous and repetitious claims, motions, petitions, demands, and appeals arising out of bankruptcy court's denial of executrix's claim, and after warning that continuation may result in injunction); *Sassower v. Sansverie,* 885 F.2d 9, 10–11 (2d Cir.1989) (per curiam) (upholding district court's enforcement of injunction issued due to litigant's "avalanche of litigation"). Even in *Sassower,* where the Second Circuit found the litigant's appeal frivolous and noted that it was the sixth appeal filed with them in one year, that Court did not enjoin him from free access to them, but instead warned him that such an injunction would be forthcoming if he continued to abuse the judicial process. *Sassower,* 885 F.2d at 11.

Finally, and perhaps most important, we note that Mr. Carlin has failed to respond to the defendants' motion to dismiss this action. It may be that he realizes that the value of this litigation has come to an end.

For these reasons, we do not believe it is appropriate at this point to grant defendants' request to enjoin plaintiff from any action relating to the issues previously adjudicated against him. Further, we do not at this stage believe that granting an award of attorneys' fees or sanctions against this *pro se* litigant would be productive. With the dismissal of this complaint, the litigation surrounding the validi-

ty of the Judgment should be at an end and enforcement of that Judgment may proceed.

However, we give plaintiff fair warning that, apart from a direct appeal of this Court's decision, any further litigation of these issues will be considered frivolous and vexatious, and may result in the issuance of injunctive relief, as well as an award of attorneys' fees and sanctions against him.

### III. CONCLUSION

For the reasons set forth above, plaintiff's complaint is dismissed with prejudice as to all defendants. The Westchester County Clerk shall cancel the Notice of Pendency filed in this action. Defendants' requests for a permanent injunction, costs, and sanctions against plaintiff are hereby denied.

SO ORDERED.