OPINION OF THE COURT
Victor J. Alfieri, Jr., J.
*286 This matter was commenced by a small claims summons, dated August 13, 1996, originally filed with the Town of Orangetown Justice Court. Thereafter, the matter was transferred to this court by order of the Honorable Angelo J. Ingrassia, Administrative Judge 9th Judicial District, due to the recusal of both Justices of the Town of Orangetown. A motion to dismiss was made by the Town in or about March of 1997. Pursuant to this court’s decision in Schneider v Town of Orangetown (171 Misc 2d 497), the motion was denied. The matter was thereafter appealed to the Appellate Term which affirmed this court’s decision remanding the case for a trial. (Schneider v Town of Orangetown, 175 Misc 2d 899.) The Appellate Term found that the plaintiffs’ claim seeking reimbursement for monies “spent in replacing [a sewer] pipe is clearly based on the theory of unjust enrichment”. (Schneider v Town of Orangetown, supra, at 900.)
The matter was tried before this court on February 5, 1998 and this court reserved decision and allowed the parties, on consent, to submit to the court certain documents. The following exhibits have been submitted to the court by the parties and marked in evidence as follows:
On behalf of the plaintiff:
1. Exhibit No. 1: survey of plaintiffs’ premises.
2. A recent title report insuring premises in favor of purchaser from the plaintiffs, Jerry and Bernadetter Kuperberg (dated Dec. 29, 1997). (Plaintiffs’ No. 2.)
3. Deed to William and Ann Schneider for the premises in question. (Plaintiffs’ No. 3.)
4. File map No. 2573 depicting the streets and lots of map of Rockland section BI at Orangeburg. Map No. 2573 filed on June 24, 1958 with the Rockland County Clerk. (Plaintiffs’ No. 4.)
On behalf of the defendant:
A. A portion of the Town rules and regulations regarding sewers, page 3005. (Defendant’s A.)
B. A 1955 resolution regarding maintenance and use of sewers in the Town of Orangetown. (Defendant’s B.)
C. A 1960 amendment to the 1955 resolution. (Defendant’s C.)
D. Deed to the Town of Orangetown July 17, 1958 conveying all roads and streets as shown on map No. 2517. (It appears that the Town incorrectly forwarded a deed for a section of Rockland Estates which does not contain the premises in ques *287 tion, at least according to the terms of the deed. The premises in question appear on map No. 2573.)
On January 10, 1955, the Town of Orangetown adopted, by unanimous vote of the Town Board, rules and regulations governing the maintenance and use of the sewer system of all sewer districts in the Town of Orangetown. Among other things, the 1955 law provided as follows: “Section 1(f) House Sewer shall include all pipes and appurtenances necessary to connect a building with the system and it shall begin at the inside base of the foundation wall or at an equivalent place and shall end at the connection to the system.”
Section 2 of said law provides as follows: “Any person, firm or corporation, desiring to lay, re-lay, or repair sewer, pipe or connections or any appurtenant part thereto, in or below the surface of any private or public highway, road, street or avenue within the district to connect any part of the system, shall prior to the commencement of any work, apply for and obtain the necessary authority in the matter hereinafter provided, and all charges, fees, or rates shall be due and payable in advance [to] the Town, and when so paid shall be credited to the operation and maintenance fund of the district. Such permit shall not create any vested right in or under such private or public highway, road, street or avenue, and such permit will be issued upon the expressed condition that the Board may, at any time revoke, and annul the same if it is deemed for the best interest of the District and Town.”
Section 4 provides in part as follows: “One permit shall be issued to cover the excavation and construction of the house sewer and/or to disconnect the existing house drain or sewer pipe from the septic tank and then to connect it to the newly laid house sewer discharging into the street sewer.”
Section 5 reads in pertinent part as follows: “All house sewer connects construction shall be done by the owner at his own cost and expense except that portion between the main and curb line which shall be done by the district.” (Emphasis supplied.)
In 1964 an amendment to section 5 was passed unanimously amending section 5 to read as follows:
“All house sewer constructions including that portion between the main and the curb (which shall be of 5 inch pipe unless the Superintendent shall direct that a larger size be used) shall be done by the owner at his own cost and expense * * *
“It shall be the responsibility of the owner to procure any necessary permits for the street openings and to replace the *288 street surface in a condition satisfactory to the Highway Department having jurisdiction. All construction shall be under the supervision of the District Superintendent. Where the existing sewer main is not located in a public street, the person desiring to connect with such sewer main shall relocate the said main in the nearest public street in accordance with specification of the District Superintendent. ” (Emphasis supplied.)
Clearly, the amendment, among other things, intended to transfer the financial responsibility to the homeowner, with regard to the repair and maintenance of “that portion [of pipe] between the main and curb line which shall be done by the homeowner at his own cost and expense”. (See, 1964 amendment, exhibit C.) The plaintiffs contend, in essence, that in transferring the cost to replace the piping, the Town acted improperly. The plaintiffs contend that they took title to their premises while the 1955 statute was in effect, and the 1964 amendment deprives plaintiffs of their “vested interest” in the Town’s continued responsibility for the repair of the pipe between the main line and curb line.
The plaintiffs claim that the statute cannot be applied “retroactively” to deprive the plaintiffs of their “vested interest” in having the Town of Orangetown repair the sewer pipes when and if it becomes necessary to do so as it did in the case at bar. The plaintiffs paid in excess of $3,000 for repair of the sewer pipe servicing their dwelling.
Generally, statutes are deemed either “prospective or retrospective in operation”. (McKinney’s Cons Laws of NY, Book 1, Statutes § 51 [a], at 86.) A retroactive statute is defined as follows: “A retroactive statute may be defined as one which takes away or impairs vested rights acquired under existing law, or creates a new obligation, imposes a new duty, or attaches a new disability in respect to transactions or considerations already past. It is a statute which looks backward or contemplates the past and which is made to affect acts or facts occurring, or rights accruing, before it came in force. Technically such a statute includes only an act of a civil nature, its criminal counterpart being known as an ex post facto law.” (Id., at 86-87.)
Section 51 (e) (at 97-98) reads as follows: “[A] Legislature has power, within certain limitations, to pass statutes which will apply to past happenings, and to declare a law to have a retroactive effect, particularly where such law is a beneficial one, and promotive of justice. Thus, in the absence of express *289 constitutional prohibition, a statute is not rendered invalid merely because it has retroactive effect.” Whether a statute has a prospective or retroactive effect is a matter of legislative intent. (Id., § 51 [d].)
In construing the constitutionality of a statute, “the courts first look to the language of said statute to determine if retroactive application was intended”. (People v Kassapidis, 145 Misc 2d 989, 990; McKinney’s Cons Laws of NY, Book 1, Statutes § 51 [d].) A retroactive statute may be held to violate the constitutional provisions such as the proscription of legislation impairing rights without due process. (20 NY Jur 2d, Constitutional Law, § 293.) It has been held that all property rights including vested rights are subject to the State’s police power and can be “impaired” when such powers are exercised in conformity with the due process of law. (97 NY Jur 2d, Statutes, § 227, at 180.) It has also been held that “[although a statute is not invalid merely because it reaches back to establish the legal significance of events occurring before its enactment, a traditional principle applied in determining the constitutionality of such legislation is that the Legislature is not free to impair vested or property rights [citation omitted]”. (Matter of Hodes v Axelrod, 70 NY2d 364, 370.) The Hodes Court stated the following (at 370-371): “While there is a persisting aversion to retroactive legislation generally [citation omitted], we have noted that the modern cases reflect a less rigid view of the Legislature’s right to pass such legislation and more candid consideration — on a case-by-case basis — of the various policy considerations upon which the constitutionality of retroactive legislation depends [citation omitted]. ‘[T]his is an area where broad conclusions are to be studiously avoided for it is impossible to predict in advance how in each concrete case the various factors will line up’. [Citation omitted.]”
The Hodes Court went on to “balance * * * the various factors” at issue, including the “nature of the right petitioners allegedly” have had affected by the statute, the governmental purpose involved, whether that purpose is legitimate or not, and the equality of treatment of those affected. (See, Matter of Hodes v Axelrod, supra, at 371.)
Applying the foregoing to the case at bar, clearly, it must be said that there is a strong governmental interest in providing for the maintenance of sewer lines for the benefit of all residents of the community. Such a concern on the part of the Town is a legitimate concern and one well within the Town’s police powers to regulate as a matter of health and welfare of *290 the community. Municipalities have broad discretion in maintaining the order and welfare of the community, and the police power “of municipal corporations is a most important power — in fact, one of the most essential — largely coextensive with the necessities of the particular situation, and sufficiently broad, comprehensive, and elastic to meet changing social, economic, and political conditions”. (25 NY Jur 2d, Counties, Towns, and Municipal Corporations, § 217, at 301 [citations omitted].)
It has been held that the police power was founded on the law of public necessity: “[t]he police power is founded on the law of public necessity * * * and is an attribute of sovereignty, [and in] large measure has been delegated to our cities for the purpose of protecting the lives, health, and safety of the citizens”. (25 NY Jur 2d, op. cit., § 127, at 301 [citations omitted].) Clearly, enactment of a law requiring the filing of a permit application and plans for the construction or repair of a sewer pipe, and the Town’s approval thereof, is well within the police power of the State. The issue before this court is whether the further imposition of financial responsibility for the repair between the main pipe and the curb (Town property) is a proper function of the Town pursuant to its police powers. It should be noted at this juncture that there is no argument advanced that the Town enacted the statute in a procedurally improper manner, as this issue was neither raised at trial nor in any submissions thereafter. (See, 25 NY Jur 2d, op. cit., § 261.)
Considering the nature of the “right” which the plaintiffs allege is “vested” and improperly affected by the Town ordinance, this court holds that the plaintiffs have failed to prove that a “vested interest” had indeed been affected by the statutory change. The plaintiffs cannot be said to have a vested interest in the continuing maintenance by the Town in their sewerage system, which said system while benefiting the community as a whole, provides a greater and a more direct benefit to the plaintiffs. It is the plaintiffs who derive the strongest benefit from the maintenance of the pipe in that the pipe removes waste produced by plaintiffs. The law enacted by the Town, on balance, merely places a reasonable obligation upon the plaintiff homeowners to maintain plaintiffs’ own piping which happens to lay in Town property. The action of the Town is “rationally related to a legitimate governmental purpose, and results in the equal treatment” of all homeowners similarly situated as are plaintiffs. (Matter of Hodes v Axelrod, supra, at 372.)
*291 As noted above, there is a “strong public interest to be served by permitting the law to be enforced as amended”. (Matter of Hodes v Axelrod, supra, at 372.) One may ask, why should all taxpayers be responsible for repair of pipe used exclusively by the plaintiffs? The logical and reasonable answer is that taxpayers should not be liable for a repair necessitated by a homeowner’s exclusive use of a sewer pipe. Additionally, it also must be considered that in determining the effect of a statute and the constitutionality thereof, every statute is presumed to be constitutional. (Matter of Rudack v Valentine, 163 Misc 326, affd 274 NY 615 [1937].)
The plaintiffs have failed to overcome the presumption of validity which obtains in any statutory enactment. Nor have the plaintiffs proven the statute affects an interest, which may be said to be “vested” and one which can never be so affected. Here, the Town acted well within its police powers for the benefit of the entire community by placing the expense for a direct benefit upon the homeowner who is served by the subject matter of the statute, i.e., plaintiffs’ own sewer pipes. More importantly, by plaintiffs making the repair and receiving the primary benefit, and the Town having only been indirectly benefited, it cannot be said that the Town has been “unjustly enriched”. Plaintiffs are only asked to contribute their fair share to the over-all sewer system, as are all other homeowners who came into title both before and after enactment of the 1964 amendment to the 1955 statute. As such, the Town, by virtue of plaintiffs repairing the piping to their home, has not been unjustly enriched.
Judgment is rendered in favor of the defendant.